

1  DALE WILLS
2  C.D.C. No. J-16405
   P.O. Box 5246
3  Corcoran, CA 93212-5246
   IN PRO SE

4

5

6

7

8          UNITED STATES DISTRICT COURT

9      FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                          C 07

11  DALE WILLS,                Case No.

12       Petitioner,           MEMORANDUM OF POINTS AND
                                AUTHORITIES IN SUPPORT OF
13  v.                         PETITION FOR WRIT OF HABEAS
                                CORPUS
14  JAMES TILTON, et al.,

15       Respondents.

16  _____/

17

18       MEMORANDUM OF POINTS AND AUTHORITIES

19                  INTRODUCTION

20       A reading of the following, read in conjunction with the

21  verified petition, will affirmatively establish that Petitioner

22  is being restrained of his liberty of freedom by Respondents in

23  violation of the Federal Constitution. The relief sought herein

24  should be granted in its entirety.

25                     PARTIES

26       DALE WILLS is the Petitioner in the above entitled action who

27  is in custody pursuant to the judgment of conviction of a

28  California superior court

1  JAMES TILTON, at all times relevant, is the Respondent in
2  the above entitled action who is the Director of the California
3  Department of Corrections and Rehabilitation. Respondent
4  TILTON is the Chief Custodian responsible for restraining
5  Petitioner of his liberty of freedom in violation of the Federal
6  Constitution.

7  KEN CLARK, at all times relevant, is the Respondent in the
8  above entitled action who is the Warden of California Substance
9  Abuse Treatment Facility and State Prison. Respondent CLARK
10  is the Custodian of Petitioner at the California Substance Abuse
11  Treatment Facility and State Prison responsible for restraining
12  Petitioner of his liberty of freedom in violation of the Federal
13  Constitution.

14                         STATEMENT OF FACTS
15  In order to avoid unnecessary repetition and increase in
16  copying costs, Petitioner incorporates by reference each and every
17  statement of fact set forth in the Verified Petition for Writ of
18  Habeas Corpus ("VPWHC").

19                              ARGUMENT
20  I.   Habeas Corpus Standards
21  Federal habeas corpus relief is reserved for individuals in
22  custody in violation of Federal law:

23          "The Supreme Court, a Justice thereof, a circuit judge,
            or a district court shall entertain an application for a
24          Writ of habeas corpus in behalf of a person in custody
            pursuant to the judgment of a State court only on the
25          ground that he is in custody in violation of the
            Constitution or laws or treaties of the United States."
26

27  See 28 U.S.C. § 2254 (a).

28          The Writ of habeas corpus plays a vital role in protecting

                                   2

constitutional rights. See Slack v. McDaniel, 529 U.S. 473, 483 (2000). It "has historically been regarded as an extraordinary remedy, a bulwark against convictions that violate fundamental fairness." See Brecht v. Abrahamson, 507 U.S. 619, 633-34 (1993). "Those few who are ultimately successful [in obtaining habeas relief] are persons whom society has grievously wronged and for whom belated liberation is little enough compensation." See id., at 634.

The availability and scope of habeas corpus have changed over the writ's long history, but one thing has remained constant: Habeas corpus is not an appellate proceeding, but rather an original civil action in a federal court. See Browder v. Director, Dept. of Corrections of Ill., 434 U.S. 257, 269 (1978). "[I]t is a new suit brought ... to enforce a civil right." See Ex parte Tom Tong, 108 U.S. 556, 559-60 (1883). And "although habeas is a civil proceeding, someone's custody, rather than mere civil liability, is at stake." See O'Neal v. McAninch, 513 U.S. 432, 440 (1995).

[A] habeas suit begins with the filing of an application for habeas corpus relief – the equivalent of a complaint in an ordinary civil case. See Woodford v. Garceau, 538 U.S. 202, 208 (2003). The application must state with particularity the grounds for relief and the facts supporting each ground for relief. See Mayle v. Felix, 125 S. Ct. 1562, 2570 (2005) (citing Habeas Corpus Rule 2 (c)). A prime purpose of this requirement "is to assist the district court in determining whether the State should be ordered to 'show cause why the writ should not be granted.'" See id., at 2570 (quoting 28 U.S.C. § 2243).

"The original petition shall be presented promptly to a judge of the district court in accordance with the procedure of the court for the

1    assignment of its business. The petition shall be examined promptly
2    by the judge to whom it is assigned. If it plainly appears from the
3    face of the petition and any exhibits annexed to it that the
4    petitioner is . . . entitled to relief in the district court . . . the
5    judge shall order the respondent to file an answer or other
6    pleading within the period of time fixed by the court or to take
7    such other action as the judge deems appropriate." See Habeas
8    Corpus Rule 4.

9        The Anti Terrorism and Effective Death Penalty Act
10   ("AEDPA") became effective on April 24, 1996. Petitions filed
11   after this date are circumscribed by the AEDPA. See Lindh v.
12   Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d
13   1484, 1494 (9th Cir.) (en banc), cert. denied, 118 S.Ct. 586
14   (1997).

15       Congress enacted AEDPA to reduce delays in the execution in the
16   execution of state and federal criminal sentences, particularly
17   in capital cases, and to further the principles of comity, finality,
18   and federalism. See Woodford v. Garceau, supra, 538 U.S.
19   at 206. To accomplish this, AEDPA requires a petitioner to,
20   inter alia: 1) timely file the petition, see 28 U.S.C. § 2244
21   (d)(1)(A); 2) exhaust all available state court remedies, see
22   id., at 2254 (b) and (c); and 3) for claims adjudicated on the
23   merits in state courts, show that the state court decision was: A)
24   contrary to, or involved an unreasonable application of clearly
25   established federal law, or B) based on an unreasonable
26   determination of the facts in light of the evidence presented
27   in the state court proceeding. See id., at 2254 (d).

28       As will be affirmatively established during the pendency of

4

1  this proceeding, Petitioner has complied with all procedural hurdles

2  necessary to permit this Court to entertain the petition on the

3  merits. Any claim by respondents to the contrary simply run afoul

4  of the obligations imposed by Federal Rule of Civil Procedure 11.

5  II.    Ineffective Assistance of Counsel

6        A.  Trial Counsel

7        The Federal Assistance of Counsel Clause appears at the Sixth

8  Amendment of the United States Constitution: "In all criminal

9  prosecutions, the accused shall enjoy the right . . . to have the

10  assistance of counsel for his defense." See U.S. Const., amend. VI.

11        Criminal defendants have a Sixth Amendment right, applicable

12  to the States through the due process clause of the Fourteenth Amendment,

13  to the assistance of counsel. See Gideon v. Wainwright, 372 U.S.

14  335, 343 (1963). The right applies at all critical stages of a

15  proceeding when a criminal defendant's substantial rights may be

16  affected. See Mempa v. Rhay, 389 U.S. 128, 134 (1967).

17  Construed in light of its purpose, the right entitles the defendant

18  not to some bare assistance but rather to effective assistance.

19  See Strickland v. Washington, 466 U.S. 668, 686 (1984).

20  The right was designed to assure fairness in the adversary criminal

21  process. See Wheat v. United States, 486 U.S. 153, 158 (1988).

22  It is "recognized not for its own sake, but because of the effect it

23  has on the ability of the accused to receive a fair trial." See Roe v.

24  Flores-Ortega, 528 U.S. 470, 482 (2000) (quoting United States

25  v. Chronic, 466 U.S. 648, 658 (1984)); Lockhart v. Fretwell, 506

26  U.S. 364, 369 (1993) (same).

27        An ineffective assistance of counsel ("IAC") claimant must

28  satisfy two components. First, a claimant must establish that

5

1  counsel's performance was deficient, i.e., that it fell below an
2  "objective standard of reasonableness under prevailing
3  professional norms." See Strickland v. Washington, supra, 466
4  U.S. at 687-88. Second, a claimant must establish that he was
5  prejudiced by counsel's deficient performance, i.e., that "there
6  is a reasonable probability that, but for counsel's unprofessional
7  errors, the result of the proceeding would have been different."
8  See id., at 694. We discuss each part in turn below.

9           1. Deficient Performance

10  Under the first part of the Strickland test, a claimant
11  must establish deficient performance. This is not an easy task to
12  meet. No particular set of detailed rules for counsel's conduct
13  can satisfactorily take account of the variety of circumstances
14  faced by counsel. See id., at 688-89. Rather, courts must "judge
15  the reasonableness of counsel's conduct on the facts of the particular
16  case, viewed as of the time of counsel's conduct," see id., at 690,
17  and "[j]udicial scrutiny of counsel's performance must be highly
18  deferential." See id., at 689. But deference has never meant
19  abdication, and "[f]ederal courts have an independent interest in
20  ensuring that criminal trials are conducted within the ethical standards
21  of the profession and that legal proceedings appear fair to all who
22  observe them." See Wheat v. United States, supra, 466 U.S. at
23  687.

24  In the present case, Petitioner can affirmatively establish
25  deficient performance on the part of both Mr. MERTENS and Mr.
26  HAVLIK. That is, that their failure to file a motion to strike the
27  1988 First Degree Burglary prior conviction allegation resulted from
28  egregiously deficient performance that fell below an objective

1  standard of reasonableness under prevailing professional norms. As
2  set forth in the verified petition, see VPWHC, pp. 7-8, both Mr.
3  MERTENS and Mr. HAVLIK inquired about a number of aspects of the
4  case and, as relevant here, the prior conviction at issue. Once again,
5  Petitioner said: "They said I took some stuff from my dad where I
6  lived. I took a plea bargain 'cause my attorney said I would lose at
7  trial and get 24 years." See VPWHC, pp. 7-8.

8      At this point, reasonably competent counsel would have been
9  alerted to the potential invalidity of the prior conviction. That is,
10  that Petitioner could not have burglarized his own home. It is well
11  settled that "a person cannot burglarize his or her own home." See
12  People v. Davis, 18 Cal. 4th 712, 721 (Cal. 1998) (quoting People v.
13  Gauze, 15 Cal. 3d 709, 714 (Cal. 1975)). A reasonably competent
14  attorney would have conducted further investigation into this prior.
15  As the Strickland Court emphasized, "counsel has a duty to make
16  reasonable investigations or to make a reasonable decision that
17  makes particular investigations unnecessary." See id., at 691.

18      The investigation that counsel should have performed consists
19  of whether the plea bargain agreement that procured Petitioner to
20  plead guilty to the 1988 First Degree Burglary charge was made with
21  an "intelligent" waiver of the rights he's entitled to under Boykin v.
22  Alabama, 395 U.S. 238 (1969) (right to counsel; privilege against
23  compulsory self-incrimination; right to trial by jury; and right to
24  confront accusers) and In re Tahl, 1 Cal. 3d 122, 132 (Cal. 1969)
25  (same). Of course, it was not, however, because Petitioner was
26  not accurately informed of the true nature of the charges
27  against him as required, see U.S. Const., amend. VI; see also
28  Henderson v. Morgan, 426 U.S. 637, 645 (1976) (A defendant

1  must be advised of the nature of the charges against him before

2  pleading guilty); In re Tahl, supra, 1 Cal. 3d at 132 (federal

3  constitution requires a defendant to be advised of "nature of the

4  charge" before entering guilty plea), i.e., that Petitioner could

5  not have burglarized his own home. See People v. Davis, supra, 18.

6  Cal. 4th at 721. But had counsel contacted Petitioner's biological

7  father, there would have been no question that Petitioner was a

8  resident of the address he was alleged to have burglarized in 1988.

9  See VPWHC, Exhibit "A," ¶¶ 3-5.

10      The law is clear. In States that permit collateral attacks

11  upon prior convictions, an attorney has a duty to perform reasonable

12  investigations into the validity of the prior convictions. Failure

13  to do so amounts to performance that falls below an objective

14  standard of reasonableness under prevailing professional norms.

15  To this, Petitioner primarily relies Rompilla v. Beard, 125 S. Ct.

16  2456 (2005). In Rompilla, the petitioner had been found guilty of

17  murder and related offenses. See id, at 2460. During the ensuing

18  penalty phase, the prosecution sought to prove aggravating

19  circumstances to justify a death sentence. See id. The

20  aggravating factors consisted of, inter alia, "a significant history

21  of felony convictions." See id.

22      In post-conviction proceedings, Rompilla raised an IAC claim

23  based on trial counsel's failure to investigate the priors. Rompilla

24  was denied relief at each level of state courts. And although

25  the Federal district court granted habeas relief on the IAC claim,

26  the Third Circuit reversed. On certiorari, the Supreme Court

27  reversed the Third Circuit. Reviewing Rompilla's IAC claim under

28  the AEDPA's strict "clearly established Federal law" standards,

1  <u>see</u> 28 U.S.C § 2254 (d), the Supreme Court found that

2  <u>Rompilla's</u> trial lawyers were deficient in failing to examine the

3  court file on <u>Rompilla's</u> prior conviction. <u>See</u> <u>Rompilla v. Beard</u>,

4  supra, 125 S. Ct. at 2468. The <u>Rompilla</u> Court said:

5  "It is the duty of the lawyer to conduct a prompt
   investigation of the circumstances of the case and to
6  explore all avenues leading to the facts relevant to the
   merits of the case and the penalty in the event of
7  conviction. The investigation should always include
   efforts to secure information in the possession of
8  the prosecution and law enforcement authorities.
   The duty to investigate exists regardless of the
9  accused's admissions or statements to the lawyer of
   facts constituting guilt or the accused's stated
10 desire to plead guilty."

11 <u>See</u> <u>id.</u>, at 2466. (quoting 1 ABA Standards for Criminal Justice

12 4-4.1 (2d ed. 1982 supp.)); <u>see also</u> <u>Dretke v. Haley</u>, 124 S. Ct.

13 1847, 1853 (2004) (Petitioner conceded at oral argument that

14 respondent has a viable and "significant" IAC claim for counsel's

15 failure to object to prior conviction); <u>Cook v. Lynaugh</u>, 821 F. 2d

16 1072, 1078-79 (5th Cir. 1987) (finding IAC for failing to

17 investigate prior conviction); <u>People v. Marquez</u>, 188 Cal. App.

18 3d 363, 368 (5th Dist. 1986) (finding IAC for failing to object

19 to sale of heroin prior at present sale of heroin case); <u>People v.</u>

20 <u>Guizar</u>, 180 Cal. App. 3d 487, 491-92 and n. 3 (1st Dist. 1986)

21 (finding IAC for failing to object to prior murders at present murder

22 case); <u>People v. Zimmerman</u>, 102 Cal. App. 3d 647, 654-61

23 (1st Dist. 1980) (finding IAC for failing to object to robbery prior

24 at present robbery case).

25    As was the case in <u>Rompilla</u>, <u>Cook</u>, <u>Marquez</u>, <u>Guizar</u>, and

26 <u>Zimmerman</u>, Petitioner's trial counsels' failure to file a motion

27 to strike the 1988 First Degree Burglary prior conviction allegation

28 amounts to deficient performance, i.e., performance that falls

9

below an objective standard of reasonableness under prevailing professional norms. See Strickland v. Washington, supra, 466 U.S. at 688.

To be sure, trial counsels' performance was deficient in other respects as well. The first relates to Mr. MERTENS' performance at the motion to suppress evidence hearing. Mr. MERTENS' performance was deficient for: 1) his failure to call Sergeant BARNHILL as a witness and examine him to elicit testimony regarding his involvement in Petitioner's arrest and, more specifically, why he refused to allow Petitioner a blood alcohol test and refusal to take fingerprints of the bike; 2) his failure to call Petitioner as a witness and examine him to elicit testimony regarding Sergeant BARNHILL's and Deputy WALTERS' involvement in Petitioner's arrest and, more specifically, why they refused to allow Petitioner a blood alcohol test and refusal to take fingerprints of the bike; and 3) his failure to raise legal assertions that Sergeant BARNHILL's and Deputy WALTERS': a) arrest of Petitioner for drunk-in-public was just a ruse to unlawfully detain Petitioner pending the investigation into the bike in violation of the Federal Search and Seizure Clause, see U.S. Const., amend. IV; see also United Steelworkers of America v. Milstead, 705 F. Supp. 1426, 1437 (D. Ariz. 1988) (A person cannot be arrested and detained simply to allow a law enforcement agency to complete its investigation); b) adamant refusal to allow Petitioner a blood alcohol test [1]

---

[1] What's probably the most revealing evidence of malice is that the police could have forcibly taken Petitioner's blood to support the drunk in public charge. See Schmerber v. California, 384 U.S. 757, 770-71 (1966). Not surprisingly, however, the police chose not to exercise this authority as they knew any kind of testing for alcohol would have been negative. In fact, Petitioner was never even prosecuted for drunkenness.

1   was nothing other than an intentional and malicious destruction of
2   evidence, i.e., proof that Petitioner was not drunk in public,
3   whose material, exculpatory value was apparent before its
4   destruction in blatant violation of the Federal Due Process Clause,
5   see U. S. Const., amend. XIV § 1; see also Arizona v. Youngblood,
6   488 U. S. 51, 58 (1988) (holding that bad faith destruction of
7   evidence is a violation of due process); California v. Trombetta,
8   467 U. S 479, 488 (1984) (holding that destroyed evidence must
9   have been material and exculpatory); In re Newborn, 55 Cal. 2d
10  508, 511 (Cal. 1961) (The denial of an opportunity to procure a blood
11  test on a charge of intoxication prevents the accused from obtaining
12  evidence necessary to his defense and is a denial of due process of
13  law entitling him to discharge); and c) adamant refusal to take
14  fingerprints of the bike was nothing other than an intentional and
15  malicious destruction of evidence, i.e., proof that the person who
16  lunged the bike at Petitioner was the possessor of the bike and not
17  Petitioner, whose material, exculpatory value was apparent before
18  its destruction, in violation of the Federal Due Process Clause, see
19  U. S. Const., amend. XIV § 1; Arizona v. Youngblood, supra, 488
20  U. S. at 58; California v. Trombetta, supra, 467 U. S. at 488.

21      Second, Mr. HAVLIK'S performance at the jury trial was
22  deficient for his having advised and convinced Petitioner to commit
23  perjury by trying to play upon a diminished capacity defense and
24  claim that he had been drinking so as to ask the jury to excuse
25  Petitioner from criminal responsibility even if Petitioner committed
26  the act. But Petitioner wished to testify truthfully and maintain
27  his sobriety and innocence and, if, for whatever reason, found guilty
28  by the jury to raise, inter alia, a claim of unlawful arrest on appeal.

11

1   Mr. HAVLIK'S advice in this regard resulted in an irreconcilable
2   conflict of interest. "[W]hen a trial court finds an irreconcilable
3   conflict of interest which impairs the ability of a criminal
4   defendant's chosen counsel to conform with the ABA Code of
5   Professional Responsibility, the court should not be required to
6   tolerate an inadequate representation of a defendant." See
7   Wheat v. United States, supra, 486 U.S. at 160.

8       Clearly, trial counsels' performance in People v. Wills, Alameda
9   County Superior Court No. H-21247, was deficient from beginning to
10  end sufficient to satisfy the first part of the Strickland test.

11              2.  Prejudice
12      Under the second part of the Strickland test, a claimant must
13  establish prejudice. The question is whether "there is a reasonable
14  probability that, but for counsel's unprofessional errors, the result
15  of the proceeding would have been different." See Strickland v.
16  Washington, supra, 466 U.S. at 694. A reasonable probability is
17  a probability sufficient to undermine confidence in the outcome.
18  See id. "A 'reasonable probability' is less than a preponderance:
19  '[t]he result of a proceeding can be rendered unreliable, and hence
20  the proceeding itself unfair, even if the errors of counsel cannot be
21  shown by a preponderance of the evidence to have determined the
22  outcome.'" See Pirtle v. Morgan, 313 F.3d 1160, 1172 (9th Cir. 2002)
23  (quoting Strickland, 466 U.S. at 694).

24      In the present case, counsels' deficient performance, individually
25  and cumulatively, resulted in extreme prejudice. The first relates
26  to Mr. MERTENS' and Mr. HAVLIK'S failure to file a motion to strike
27  the First Degree Burglary prior conviction allegation. This failure
28  was extremely prejudicial as it had a substantial, adverse ripple

12

effect in the proceedings. For example, when Petitioner testified at trial, he was required to answer "yes!" to the prosecutor's question as to whether Petitioner had sustained the alleged prior conviction. See VPWHC, p. 9. When the jury heard this information, their facial expressions exhibited contempt towards Petitioner. See id. The introduction of this prior for impeachment purposes had the irreparably damaging effect of turning the jury against the Petitioner for the remainder of the proceedings, i.e., causing the jury to return a verdict of guilty based on contempt towards Petitioner rather than on an objective assessment of the facts. In addition, the prior at issue was used to enhance Petitioner's sentence by 11 additional years. Had counsel filed the motion to strike the prior at issue, however, the result of the proceeding would surely have been different. That is, it must be presumed that the trial judge was aware of the law governing this issue, see Lambrix v. Singletary, 520 U. S. 43, 68 n. 23 (1997) (Trial judges are presumed to be aware of the law and to apply it in making their decisions), and as such the prior: 1) would have been stricken from the accusatory pleading, see People v. Coffey, 67 Cal. 2d 204, 217 (Cal. 1967); 2) could not have been used to enhance or aggravate in the pending case, see In re Dabney, 71 Cal. 2d 1, 11 (Cal. 1969); People v. Coffey, supra, 67 Cal. 2d at 217; Burgett v. Texas, 389 U. S. 109 (1967); and 3) could not have been used to impeach the defendant in the pending case under California Evidence Code § 788. See People v. Coffey, supra, 67 Cal. 2d at 217; Loper v. Beto, 405 U. S. 473, 483 (1972).

Thus, it must be presumed as a matter of law that had counsel filed the motion to strike the prior at issue, the jury

1  would not have been emotionally induced to return a verdict based
2  on contempt and the sentence would not have been increased by 11
3  years for a total of 17 years. This amount of time is extremely
4  prejudicial. The United States Supreme Court made much of
5  this in Glover v. United States, 531 U.S. 198 (2001). The
6  Glover Court said:

7     "Authority does not suggest that a minimal amount of
8     additional time in prison cannot constitute prejudice.
       Quite the contrary, our jurisprudence suggests that any
       amount of actual jail time has Sixth Amendment
9     significance."

10  See id., at 203.

11     Surely, 11 additional years, not to mention the initial 6,
12  qualifies under Glover, supra, as "any amount of actual jail
13  time."

14     To add insult to injury, we have Mr. MERTENS' omissions at
15  the motion to suppress evidence hearing. Had it not been for his
16  failure to adequately investigate into Sergeant BARNHILL'S and
17  Deputy WALTERS' involvement in Petitioner's arrest and, more
18  specifically, why they refused to allow Petitioner a blood alcohol
19  test and why they refused to take fingerprints of the bike, and
20  Mr. MERTENS' failure to call Petitioner as a witness and examine
21  Petitioner regarding Sergeant BARNHILL'S and Deputy WALTERS'
22  actions in the arrest of Petitioner, and Mr. MERTENS' failure
23  to raise legal assertions of unlawful arrest (other than the
24  boilerplate assertion raised in the moving papers) and destruction
25  of evidence, i.e., blood alcohol test and fingerprints of the
26  bike, the result of the proceeding would surely have been
27  different. That is, the bike and statements allegedly made by
28  Petitioner would have been suppressed under the Federal

14

1  Exclusionary Rule as "fruit of the poisonous tree" due to the
2  unlawful arrest of Petitioner.  In addition, the jury would not
3  have been falsely led to believe that Petitioner was in possession
4  of the bike, i.e., the bike that was tainted due to Sergeant
5  BARNHILL'S and Deputy WALTERS' malicious refusal to take
6  fingerprints of the bike so as to destroy material, exculpatory
7  evidence.

8         Similarly, we have Mr. HAVLIK'S actions at the jury trial
9  itself.  Had it not been for his having convinced Petitioner to
10  commit perjury by attempting to convince the jury that Petitioner
11  was drunk in public so as to support a diminished capacity defense,
12  the result of the proceeding would surely have been different.
13  That is, the jury was asked to consider that, even assuming,
14  arguendo, Petitioner is found to have actually committed the
15  alleged acts (though such an assumption should not be construed
16  as a concession but is merely stated for the purpose of this point
17  of argument), whether he should be acquitted due to diminished
18  capacity.  This, falsely to be sure, put in the jury's mind that
19  Petitioner actually committed the alleged acts when in fact he did
20  not.

21         In sum, the individual and cumulative effect of counsels'
22  errors in the trial court were so egregiously prejudicial as to
23  render those proceedings fundamentally unfair and
24  unreliable in the outcome.  This of course is the ultimate
25  inquiry in any ineffective assistance of counsel claim.  See
26  Strickland v. Washington, supra, 466 U. S. at 696.

27         Clearly, counsels' deficient performance in People v. Wills,
28  Alameda County Superior Court No. H-11247, was egregiously

1   prejudicial resulting in a proceeding that was fundamentally

2   unfair and unreliable in its outcome sufficient to satisfy

3   the second part of the Strickland test.

4       B. Appellate Counsel

5       The Federal Due Process Clause, applicable to the States,

6   appears at Section 1 of the Fourteenth Amendment of the United

7   States Constitution: "... No state shall ... deprive any person of

8   ... liberty ... without due process of law...," See U. S. Const.,

9   amend. XIV § 1.

10      The Due Process Clause of the Fourteenth Amendment

11  guarantees an indigent criminal defendant the right to counsel on

12  a first appeal of right. See Douglas v. California, 372 U. S.

13  353, 358 (1963). The right necessarily includes the right to the

14  effective assistance of appellate counsel. [2] See Evitts v. Lucey,

15  469 U. S. 387, 396 (1985).

16      1. Deficient Performance

17      In the present case, appellate counsel was deficient for

18  his: 1) failure to raise a legal assertion that the prior conviction

19  at issue was unconstitutionally obtained; 2) failure to raise a

20  legal assertion of unlawful arrest (no probable cause); 3) failure

21  to raise a legal assertion of malicious destruction of material,

22  exculpatory evidence (blood alcohol test/finger prints of the bike);

23  4) failure to raise a legal assertion of prosecutorial misconduct

24  (false impression of the facts in convincing jury that Petitioner

25  had a prior First Degree Burglary conviction while at the same

26  time convincing the jury was a resident of the address of the prior

27      [2] Such claims are reviewed under the Strickland standard.

28  See Smith v. Murray, 477 U. S. 527, 535-36 (1986).

1  burglary); and 5) failure to raise a legal assertion that trial
2  counsel was ineffective for raising a false diminished capacity
3  defense and that both trial counsel were ineffective in regards
4  to circumstances 1-4.

5       In the present case, Appellate Counsel's failure to raise these
6  claims and instead prepare and submit a brief under the case of
7  People v. Wende, 25 Cal. 3d 436 (Cal. 1979), constitutes
8  deficient performance. Although the procedures in Wende are
9  constitutionally adequate, see Smith v. Robbins, 528 U.S.
10  259 (2000), the filing of a Wende brief does not automatically
11  amount to effective representation. Whether the submission of
12  a Wende brief constitutes effective assistance of counsel, is a
13  matter to be resolved by the facts presented by a particular case.
14  See Delgado v. Lewis, 223 F. 3d 976, 981 (9th Cir. 2000).
15  And although appellate counsel need not (and should not) raise
16  every non-frivolous claim, see Smith v. Robbins, supra, 528 U.S.
17  at 288, he must play the role of an active advocate, rather than
18  a mere friend of the court assisting in a detached evaluation of
19  appellant's claim. See Evitts v. Lucey, supra, 469 U.S. at 394.
20  "[N]ominal representation on appeal as of right - like nominal
21  representation at trial - does not suffice to render the
22  proceedings constitutionally adequate; a party whose counsel is
23  unable to provide effective representation is in no better
24  position than one who has no counsel at all." See id., at 396.

25       As set forth above, appellate counsel did not even raise a single
26  one of the meritorious claims conveyed by Petitioner.

27       Clearly, appellate counsel's performance in People v. Wills,
28  First District Court of Appeal No. A075136, was deficient from

17

beginning to end sufficient to satisfy the first part of the Strickland test.

## 2.  Prejudice

In the present case, Petitioner was egregiously prejudiced by appellate counsel's deficient performance. Had it not been for appellate counsel's deficient performance the result of the proceeding would surely have been different. That is; had appellate counsel played the role of an active advocate by preparing and submitting a merits brief raising the above claims, the First District Court of Appeal would have found that: 1) the arrest and detention of Petitioner constituted an unlawful seizure in violation of the Federal Search and Seizure Clause, and as such the bike, and any and all other alleged evidence that was obtained incidental to the arrest would have been suppressed under the exclusionary rule as "fruit of the poisonous tree"; 2) the prior conviction at issue was unlawfully used to impeach Petitioner and increase his sentence; 3) the prosecution committed misconduct by convincing the jury that Petitioner was a resident of and yet burglarized his own home (false impression of the facts); trial counsel was ineffective for failing to adequately present these claims and for having convinced Petitioner to commit perjury in an attempt to support a diminished capacity defense.

Clearly, appellate counsel's deficient performance in People v. Wills, First District Court of Appeal No. A075136, was egregiously prejudicial resulting in a proceeding that was fundamentally unfair and unreliable in its outcome sufficient to satisfy the second part of the Strickland test.

18

III.    Prosecutorial Misconduct

The Federal Due Process Clause, applicable to the States, appears at Section 1 of the Fourteenth Amendment of the United States Constitution: ". . . No state shall . . . deprive any person of . . . liberty . . . without due process of law. . . ." See U. S. Const., amend. XIV § 1.

The Due Process Clause "cannot tolerate a state criminal conviction obtained by the knowing use of false evidence." See Miller v. Pate, 386 U. S. 1, 7 (1967). "The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." See Napue v. Illinois, 360 U. S. 264, 269 (1959). Moreover, the Supreme Court explained that the constitutional violation occurs when the false evidence relates merely to the credibility of a witness rather than proof of the substantive charge. The Napue Court said:

> "The jury's estimate of the truthfulness in reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend."

See id., at 269.

In the present case, the prosecutor committed egregious misconduct by his false impression of the facts to the jury. These material facts consist of the prosecutor in convincing the jury that Petitioner had a prior conviction for First Degree Burglary while at the same time convincing the jury that Petitioner was a resident of the address he was alleged to have previously burglarized. But these facts cannot possibly coexist. Once again, "a person cannot burglarize his or her own home." See People v. Davis, supra, 18

19

1  Cal. 4th at 721. And it must be presumed, as a matter of law, that
2  the prosecutor, as a skilled attorney, was aware of the falsity of
3  his actions. His failure to correct these facts resulted in a
4  fundamental violation of Petitioner's Federal constitutional
5  right to a fair trial. A prosecutor "has a duty to correct the
6  false impression of the facts." See United States v. LaPage,
7  231 F. 3d 488, 492 (9th Cir. 2000). This duty "is not
8  discharged merely because defense counsel knows, and the jury
9  may figure out, that the testimony is false." See id. Reversal
10 of the conviction may be the only appropriate remedy. A conviction
11 obtained by the knowing use of false testimony must be set aside
12 "if there is any reasonable likelihood that the false testimony
13 could have affected the judgment of the jury." See United
14 States v. Agurs, 427 U.S. 97, 103 (1976).
15      Clearly, the prosecutor's false impression of the facts in People
16 v. Wills, Alameda County Superior Court No. H-21247, constitutes
17 egregious misconduct that had a substantial and injurious
18 effect or influence in the jury's verdict.

                        CONCLUSION

20      Accordingly, the foregoing facts, evidence, and argument is
21 persuasive beyond any reasonable doubt that Petitioner was not
22 provided with the effective assistance of trial and appellate
23 counsel and that the prosecutor's false impression of the facts
24 amounts to egregious misconduct, and as such Respondent is
25 restraining Petitioner of his liberty of freedom in violation
26 of the United States Constitution. In addition, Petitioner
27 has complied with all of the procedural hurdles required by the
28 AEDPA sufficient to permit this Court to grant the relief by

20

this petition on the merits, i.e., all state judicial remedies have been completely exhausted (all grounds have been presented to and denied by the state superior court, state appellate court, and state supreme court), the petition is timely (Petitioner is entitled to equitable tolling under the doctrine of fraudulent concealment and statutory tolling under the state impediment provision of AEDPA), and the petition does not constitute an abuse of the writ (these grounds have not been presented to and denied by a Federal habeas court nor were these grounds previously available to Petitioner).

WHEREFORE, Petitioner prays for this Court to issue a formal order requiring Respondent to serve and file an answer and show cause, if any cause exists, why:

1. The Petitioner should not be unconditionally [3] discharged from custody, and

2. The State should not be prohibited from retrying [4] Petitioner.

DATED: 2-21-2007

Respectfully Submitted,

By: _Dale Wills_
DALE GARY WILLS
Petitioner In Pro Se

---

[3] Assuming, arguendo, that the Court finds that trial and appellate counsel were ineffective regarding the prior at issue, i.e., had the motion to strike been filed it would have been granted, then Petitioner has already served more than the maximum permissible sentence even if retried and convicted.

[4] Excluding all the tainted evidence, i.e., the bike and statements allegedly made by Petitioner, the trial testimony and the inadmissible prior burglary conviction, there would be insufficient evidence to sustain a guilty verdict by any rational jury.