1  DALE WILLS
   C.D.C. No. J-16405
2  P.O. Box 5246
   Corcoran, CA 93212-5246
3  IN PRO SE



FILED

JAN 1 8 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

8           UNITED STATES DISTRICT COURT

9       FOR THE NORTHERN DISTRICT OF CALIFORNIA

11  DALE WILLS,                    Case No. C-07-3354 CW (PR)

12          Petitioner,            PETITIONER'S MEMORANDUM OF
                                   POINTS AND AUTHORITIES IN
13  v.                             OPPOSITION TO RESPONDENTS'
                                   MOTION TO DISMISS
14  JAMES TILTON, et al.,

15          Respondents.

16  _____/

ORIGINAL

18      MEMORANDUM OF POINTS AND AUTHORITIES

19              INTRODUCTION

20      A reading of the following facts and argument will

21  affirmatively establish that Respondents' Motion to

22  Dismiss is submitted in bad faith for the purposes of

23  deception and as a delay tactic to maliciously perpetuate

24  the unlawful restraint of Petitioner's liberty of

25  freedom in violation of the Federal Constitution.

26  Respondents' Motion to Dismiss should be rejected in its

27  entirety.

28  ///

ARGUMENT

1     Respondents assert that Petitioner failed to comply with
2 the one-year statute of limitations contained in the Antiterrorism
3 and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. §
4 2244. See Respondents' Motion to Dismiss ("RMD"), p. 7, lines 21-24.
5 Respondents are woefully incorrect. Petitioner has not "failed"
6 in way shape or form. Rather it was counsels' "failure" that
7 caused the delay in the discovery of the legal bases of the claims
8 raised in this proceeding.

I.  Equitable Tolling

     It is hornbook law that limitations periods are "customarily
subject to 'equitable tolling,'" unless tolling would be
"inconsistent with the text of the relevant statute." See Young
v. United States, 122 S. Ct. 1036, 1040 (2002) (citations
omitted). Congress must be presumed to draft limitations
periods in light of this background principle. See id.

     The doctrine of equitable tolling provides that "where a
plaintiff has been injured by fraud and remains in ignorance
of it without any fault or want of diligence or care on his part,
the bar of the statute does not begin to run until the fraud is
discovered." See Federal Election Comm'n v. Williams, 104
F. 3d 237, 240 (9th Cir. 1996) (citation omitted). The
equitable doctrine is read into every Federal statute of
limitations. See id.

     In the present case, Respondents assert that the statute
of limitations began to run on August 9, 1997. See RMD, p. 8,
line 24. This is incorrect. The statute of limitations did NOT
begin to run until Petitioner discovered counsels' fraud in

1  concealing the legal bases of the claims raised in this
2  proceeding. See Rotella v. Wood, 528 U.S. 549, 555
3  (2000). Petitioner discovered the legal bases of these claims
4  in March of 2005 when he came upon the People v. Davis case.
5  See Verified Petition for Writ of Habeas Corpus ("VPWHC"), p.
6  12, lines 13-17. Petitioner cannot be faulted for counsels'
7  ineffectiveness lest the constitutional right to effective
8  assistance of counsel be wholly meaningless. It is not always
9  the case . . . that a defendant can be faulted for failing to
10  obtain timely review of a constitutional claim. See e.g.,
11  Lackawanna County Dist. Attorney v. Coss, 532 U.S. 394, 405
12  (2001). A layman will ordinarily be unable to recognize
13  counsel's errors and to evaluate counsel's professional
14  performance . . . ; consequently a criminal defendant will
15  rarely know that he has not been represented competently until
16  after trial or appeal, usually when he consults another lawyer
17  about his case. See Kimmelman v. Morrison, 477 U.S. 365,
18  378 (1986) (citation omitted). Indeed, an accused will often
19  not realize that he has a meritorious ineffectiveness claim
20  until he begins collateral review proceedings, particularly if
21  he retained trial counsel on direct appeal. See id. Without
22  counsel the right to a fair trial itself would be of little
23  consequence . . . , for it is through counsel that the accused
24  secures his other rights. See id., at 377.
25      Because Petitioner has a constitutional right to the
26  effective assistance of counsel at trial, see Strickland v.
27  Washington, 466 U.S. 668 (1984), and on appeal, see Evitts v.
28  Lucey, 469 U.S. 387, 396 (1985), and because the prevailing

1  professional norms require investigation into prior convictions, see

2  Rompilla v. Beard, 125 S. Ct. 2456 (2005)[1]; Dretke v. Haley,

3  124 S. Ct. 1847 (2004) (Dictum); Cook v. Lynaugh, 821 F. 2d

4  1072 (5th Cir. 1987); People v. Marquez, 188 Cal. App. 3d 363

5  (5th Dist. 1986); People v. Guizar, 180 Cal. App. 3d 487 (1st

6  Dist. 1986); People v. Zimmerman, 102 Cal. App. 3d 647 (1st

7  Dist. 1980), and because once Petitioner relayed the facts

8  concerning the prior conviction to all counsel involved, see VPWHC,

9  pp. 7-8 and 10, counsel were presumed to be aware of their duty

10  to obtain evidence of the unlawfulness of the prior, see VPWHC,

11  Exhibit "A," ¶¶ 3-5, for the successful prosecution of a motion

12  to strike the prior conviction, see People v. Sumstine, 36 Cal.

13  3d 909, 916 (Cal. 1984) (A motion to strike is generally the

14  proper vehicle for challenging the constitutionality of a prior

15  conviction alleged in a pending case), counsels' failure to file

16  a motion to strike the prior conviction, in conjunction with

17  their fraudulent concealment of the legal basis of the invalid

18  prior conviction, is the legal cause for the delayed presentation

19  of the claims raised in this proceeding.  Attorney error that

20  constitutes ineffective assistance of counsel is cause.  See

21  Coleman v. Thompson, 501 U.S. 722, 753-54 (1991).  Where a

22  petitioner defaults a claim as a result of the denial of the

23  right to effective assistance of counsel, the State, which is

24  responsible for the denial as a constitutional matter, must

25  bear the cost of any resulting default and the harm to state

26

27  [1] As is more fully discussed below, it may be that the Rompilla
decision entitles Petitioner to statutory tolling under the "new-rule"
provision of the AEDPA.  See 28 U.S.C. § 2244 (d)(1)(c).

28

4

1  interests that federal habeas review entails. See Coleman v.
2  Thompson, supra, 501 U.S. at 754. Cf. O'Neal v. McAninch,
3  513 U.S. 432, 443 (1995) (the State normally bears
4  responsibility for the error that infected the initial trial).
5      Application of the Ninth Circuit's decision in Spitsyn
6  v. Moore, 345 F. 3d 796 (9th Cir. 2003) to the facts of this
7  case is particularly appropriate. In agreeing with the
8  Second and Third Circuits, the Spitsyn Court found that
9  "equitable tolling is appropriate when a delay in filing a
10  habeas petition resulted from sufficiently egregious
11  performance of counsel," See id., at 800. The Court noted
12  that although he was hired nearly a year in advance of the deadline,
13  Spityn's attorney completely failed to prepare and file a
14  petition. See id., at 801. The Court also noted that Spitsyn
15  and his mother contacted counsel numerous times, by telephone
16  and in writing, seeking action, but these efforts proved fruitless.
17  See id. The Court concluded that this misconduct of Spitsyn's
18  attorney was sufficiently egregious to justify equitable tolling
19  of the one-year limitations period under AEDPA. See id.
20      Certainly, the actions of Petitioner's state trial and
21  appellate counsel suffice to meet Spitsyn's requirement of
22  "sufficiently egregious performance of counsel" as it mirrors
23  the actions of Spitsyn's counsel. Indeed, the actions of
24  Petitioner's counsel is even more egregious than the actions of
25  Spitsyn's attorney. Petitioner's counsel actually concealed the
26  legal basis of the claims. No such circumstance existed in
27  Spitsyn. The only really materially distinguishable difference
28  in the facts of this case and that of Spitsyn, which actually

5

1  tips the scale sharply in favor of Petitioner's position, is that

2  Petitioner has a Federal Constitutional right to the effective

3  assistance of counsel at trial, see Strickland v. Washington,

4  supra, and on appeal, see Evitts v. Lucey, supra, whereas

5  Spitsyn had no right to counsel at all. See Lawrence v. Florida,

6  127 S. Ct. 1079, 1085 (2007).

7       Similarly, once Petitioner came upon the People v. Davis

8  case in March of 2005, see VPWHC, p. 12, and hence discovered

9  counsels' fraudulent concealment of the legal bases of the

10 claims raised in this proceeding, Petitioner exercised "due

11 diligence" to protect his rights. [2]  Petitioner contacted all

12 counsel involved demanding corrective action. See VPWHC, p. 12;

13 Declaration of DALE WILLS ("Wills I Dec.") in Support of

14 Petitioner's Memorandum of Points and Authorities in Opposition

15 to Respondents' Motion to Dismiss, ¶ 3. And when Petitioner

16 realized that no assistance from counsel would be forthcoming,

17 he commenced legal research into the aspects of state and

18 federal habeas corpus law, ineffective assistance of trial

19 and appellate counsel law, and prosecutorial misconduct law so

20 that he could prosecute habeas proceedings on his own behalf.

21 See VPWHC, p. 13; Wills I Dec., ¶ 5. Due to his confinement to

22 the Security Housing Unit ("SHU"), however, Petitioner's

23 access to the law library was even more restricted than normal

24 and this significantly stymied his efforts to complete the

25

26  [2] "[D]ue diligence" is an inexact measure of how much delay
    is too much. See Johnson v. United States, 544 U.S. 295, 309

27  n. 7 (2005). As a discretionary doctrine that turns on the facts and
    circumstances of a particular case, equitable tolling does not lend

28  itself to bright-line rules. See Spitsyn v. Moore, supra, 345 F.3d
    at 801.

1  necessary legal research. See Wills I Dec., ¶ 5. The Ninth Circuit
2  has recognized that "confinement makes compliance with
3  procedural deadlines difficult because" "[p]ro se prisoners
4  are limited in their access to legal materials," see e.g., Rand v.
5  Rowland, 154 F. 3d 952, 958 (9th Cir. 1998) (en banc), cert.
6  denied, 527 U. S. 1035 (1999), and that a lack of access to
7  adequate law library materials may amount to an impediment
8  to justify equitable tolling. See Roy v. Lampert, 465 F. 3d
9  964, 970-71 (9th Cir. 2006). And even when Petitioner was
10  allowed access to the law library, he was required to dedicate some
11  of his time to conduct legal research on other matters as well. See
12  Wills I Dec., ¶ 5 (section 1983 action challenging conditions of
13  confinement); see also Respondents' Notice of Lodging ("RNL"),
14  Exhibit "D" (habeas corpus petition challenging conditions of
15  confinement); see id., Exhibit "F" (same). Petitioner cannot be
16  forced to choose between challenging his criminal conviction and
17  sentence and his conditions of confinement. "[A]n inmate
18  cannot be forced to sacrifice one constitutionally protected
19  right solely because one is respected." See Allen v. City &
20  County of Honolulu, 39 F. 3d 936, 940 (9th Cir. 1994). Cf.
21  Lewis v. Casey, 518 U. S. 343, 355 (1996) (The tools [Bounds v.
22  Smith, 430 U. S. 817 (1977)] requires to be provided are those
23  that the inmates need in order to attack their sentences, directly
24  or collaterally, and in order to challenge the conditions of their
25  confinement) (Brackets and emphasis added).
26      All in all, it took Petitioner a time period of two (2) months
27  in his attempt to contact all counsel involved for corrective action,
28  see Wills I Dec., ¶¶ 3-4, nine (9) months to conduct the legal

1  research necessary to prepare a meritorious memorandum of

2  points and authorities in support of the actual petition, see

3  Wills I Dec., ¶ 6, and approximately forty-five (45) days in which

4  to actually piece together a coherent, meritorious memorandum

5  of points and authorities in support of the actual petition for

6  the state superior court. See id.

7       Despite all the pitfalls Petitioner suffered, i.e., counsels'

8  failure to take corrective action, and inadequate access to legal

9  research materials, he exercised "due diligence" to protect his

10  rights to collateral relief by attempting to contact all counsel

11  involved for corrective action. And when this proved futile,

12  Petitioner commenced legal research so that he could prosecute

13  collateral proceedings in his own behalf. Petitioner did all of this

14  as soon as he was aware of the legal bases for the claims raised in

15  this proceeding. This should be sufficient. Due "diligence can

16  be shown by prompt action on the part of the petitioner as soon

17  as he is in a position to realize that he has an interest in

18  challenging the prior conviction." See Johnson v. United States,

19  supra, 544 U.S. at 308.

20       Whether the nine (9) months Petitioner dedicated to

21  conducting legal research of the issues before actually filing

22  his state superior court petition is too much is unknown. But

23  it must be remembered that if state collateral review is

24  unsuccessful, the federal petition is limited to the federal

25  claims fairly exhausted in state court. And if Petitioner

26  were to file his federal petition without conducting adequate

27  legal research, he could potentially be subject to sanctions

28  under Federal Rule of Civil Procedure 11 if the filing is

8

1  found to be baseless. Frivolous filings are those that are both baseless

2  and made without a reasonable and competent inquiry. See Estate of

3  Blue v. County of Los Angeles, 120 F. 3d 982, 985 (9th Cir. 1997).

4  Indeed, as with an attorney, it would be cavalier of Petitioner to

5  file his petition without conducting the necessary legal research

6  especially since Petitioner has only one chance at presenting these

7  claims. Giving due regard for the inadequate law library access and

8  other actions being prosecuted, see infra pp. 6-7, the nine (9) months

9  Petitioner spent conducting legal research before filing the petition

10  was absolutely necessary for an adequate presentation of the

11  claims raised in this proceeding. See Wills I Dec., ¶ 6. The

12  United States Supreme Court recognized the importance of the

13  pre-filing legal research inquiry in Bounds v. Smith, 430 U. S.

14  817 (1977). The Bounds Court said:

15  "It would verge on incompetence for a lawyer to file
16  an initial pleading without researching such issues
   as jurisdiction, venue, standing, exhaustion of
17  remedies, proper parties plaintiff and defendant,
   and types of relief available. Most importantly, of
   course, a lawyer must know what the law is in order to
18  determine whether a colorable claim exists, and, if so,
   what facts are necessary to state a cause of action. If
19  a lawyer must perform such preliminary research, it
   is no less vital for a pro per prisoner. It is not enough
20  to answer that the court will evaluate the facts
   pleaded in light of the relevant law. Even the most
21  dedicated trial judges are bound to overlook
   meritorious cases without the benefit of an
22  adversary presentation."

23  See id., at 825-26.

24      As the foregoing indicates, Petitioner put forth a good-faith

25  effort under extremely restricted circumstances to conduct the

26  necessary legal research prior to cavalierly filing just any old claim,

27  and as such Petitioner should be rewarded for his effort with

28  equitable tolling. Tolling accommodates effort, not inaction.

9

1  See Welch v. Carey, 350 F. 3d 1079, 1083 (9th Cir. 2003) (en

2  banc).

3       Petitioner also exercised "due diligence" in the prosecution

4  of state post-conviction collateral remedies as well. And although

5  the California Supreme Court denied the petition as untimely,

6  citing In re Robbins, 18 Cal. 4th 770, 780 (Cal. 1998), it is

7  indisputably clear that such a conclusion is objectively

8  unreasonable in light of the facts presented. [3] Robbins stands

9  for the proposition that "[s]ubstantial delay is measured from the

10 time the petitioner or his or her counsel knew, or reasonably should

11 have known, of the claim and the legal basis for the claim." See

12 id., at 780 (Emphasis added)

13      But because Petitioner did not discover "the legal basis for

14 the claim" until March of 2005, see VPWHC, p. 12, again because

15 counsel failed to timely raise the claims and actually concealed the

16 legal bases for the claims, his state petitions cannot be untimely

17 under state law. And because the state petitions cannot be

18 untimely under state law, it necessarily follows, a fortiori, that

19 all the state petitions were "properly filed" entitling Petitioner

20 to statutory tolling under the AEDPA. See 28 U.S.C. § 2244 (d)

21 (2); Carey v. Saffold, 536 U.S. 214, 219-20 (2002); Nino v.

22

23      [3] Not surprisingly, Respondents have not asserted procedural
   default on state untimeliness grounds. Nor could they. Not only would such
   a claim be frivolous, but, under the facts of this case, the state-law

24 determination is interwoven with federal law. The state court's
   determination of whether Petitioner established "good cause" for the

25 delay requires a determination of whether Petitioner was denied the
   effective assistance of counsel. This is exactly what the state superior

26 court did when it denied the petition. See RNL, Exhibit "H" (addressing
   both timeliness and IAC claims). Because the state law basis for decision

27 is not independent of federal law, federal habeas review of the claims
   in this proceeding is not prohibited. See Stewart v. Smith, 536 U.S.

28 856, 860 (2002).

10

1  Galaza, 183 F. 3d 1003, 1006 (9th Cir. 1999), cert. denied, 529

2  U. S. 1104 (2000).

3      There are other assertions made by Respondents that need be

4  addressed. First, Respondents assert that Petitioner filed his

5  federal petition on June 26, 2007. See RMD, p. 3, line 15,

6  among other pages. Respondents are incorrect. Petitioner asserts

7  that he mailed his federal petition to this Court on February

8  21, 2007, when he relinquished the same to prison officials for

9  forwarding to this Court. See Declaration of DALE WILLS

10  ("Wills II Dec.,") in Support of Petitioner's Motion for Order

11  Directing Clerk to Endorse File Papers Retroactively, ¶ 3.

12  Because Petitioner relinquished his federal petition to prison

13  officials for forwarding to this Court on February 21, 2007, the

14  federal petition should be deemed "Filed" on February 21, 2007.

15  See Houston v. Lack, 487 U. S. 266, 276 (1988); Saffold v.

16  Newman, 250 F. 3d 1262, 1268 (9th Cir. 2001), rev'd on other

17  grounds sub nom., Carey v. Saffold, 536 U. S. 214 (2002).

18      Second, Respondents assert that Petitioner is not entitled

19  to equitable tolling under the doctrine of "fraudulent concealment"

20  because Petitioner must show affirmative misconduct on the part

21  of the defendant but that Respondent, as the defendant here, has

22  not committed any misconduct. See RMD, p. 11, lines 4-12.

23  Respondents' assertions amount to nothing other than an attempt

24  at "verbal karate" and should disregarded as wholly frivolous.

25  It is trial and appellate counsel who are the "would-be-defendants"

26  once a suit is commenced against them.

27      Moreover, Respondents' attempt to have this proceeding

28  dismissed as time barred can easily be construed as affirmative

1  misconduct as it is an attempt to perpetuate the unlawful

2  restraint on Petitioner's liberty of freedom. Respondents are

3  simply attempting to cover up the State's failure to provide

4  Petitioner with the effective assistance of trial and appellate

5  counsel. Respondents and their counsel, as agents of the State that

6  has deprived Petitioner of his right to the effective assistance of

7  counsel as a constitutional matter, should not be rewarded for the

8  State's failure to provide Petitioner with the effective

9  assistance of counsel by having these proceedings dismissed as

10  time barred. This would result in an egregious miscarriage of

11  justice by saying ineffective assistance counsel claims are no

12  longer cognizable. Indeed, Respondents and their counsel come to

13  this Court with unclean hands. And as the United States Supreme

14  Court recently recognized, a court can still determine whether the

15  interests of justice would be better served by addressing the

16  merits or by dismissing the petition as time barred. <u>See</u> <u>e.g.</u>,

17  <u>Day v. McDonough</u>, 126 S. Ct. 1675, 1684 (2006).

18       This is just such a case where the interests of justice

19  sharply favor adjudication on the merits.

20       Third, Respondents' citation to, inter alia, <u>Rasberry v.</u>

21  <u>Garcia</u>, 448 F. 3d 1150, 1154 (9th Cir. 2006), for the rule "that

22  ignorance of the law and lack of legal experience typically do not

23  excuse prompt and timely filing, even for a pro se incarcerated

24  prisoner," <u>see</u> RMD, p. 12, lines 5-6, is not legally tenable under

25  the facts presented here. As Respondents themselves recognize,

26  <u>see</u> RMD, p. 12, lines 1-3, it was "[d]ue to [Petitioner's] lack of

27  adequate knowledge of the law and sole reliance on appointed

28  counsel," that caused the delay here. (Emphasis added). And, as

12

1  the Ninth Circuit recognized in <u>Roy v. Lampert</u>, supra, "[o]ne event
2  may have multiple causes." <u>See</u> 465 F. 3d at 973. But because
3  Petitioner had an absolute right to the effective assistance of
4  counsel at trial and on appeal, it is counsels' omissions that are
5  the legal cause of the delay, not Petitioner's lack of adequate
6  knowledge of the law.

7       Finally, Respondents assert that apart from the claim
8  concerning the invalid prior conviction, Petitioner knew of many of
9  the claims in 1997 and cannot credibly claim both that he pushed
10 for appellate counsel to raise these claims in 1997 but did not
11 know of the legal significance of them until March of 2005. <u>See</u>
12 RMD, p. 12-13. But Respondents' assertion is nothing other than
13 an attempt to deceive this Court into believing that Petitioner
14 has been untruthful in his claim of discovery of the legal bases of
15 the claims herein raised. But nowhere in his petition or supporting
16 memorandum of points and authorities does Petitioner ever
17 claim these other grounds as "independent bases for relief."
18 Quite the contrary. Aside from the invalid prior conviction and
19 prosecutorial misconduct issues, the remaining issues are not
20 presented as "independent bases for relief," but, rather as
21 aggravating circumstances to demonstrate both the extent of
22 counsels' deficient performance and prejudice involved. <u>See</u>
23 <u>Kimmelman v. Morrison</u>, supra, 477 U.S. at 386; <u>Mak v.</u>
24 <u>Blodgett</u>, 970 F. 2d 614, 622 (9th Cir. 1991), <u>cert. denied</u>, 507
25 U.S. 951 (1993); <u>Cooper v. Fitzharris</u>, 586 F. 2d 1325, 1333
26 (9th Cir. 1978) (en banc), <u>cert. denied</u>, 440 U.S. 974 (1979).
27      Nevertheless, the IAC claim for the invalid prior conviction
28 is in and of itself sufficiently egregious to justify relief.

13

1  "[T]he right to effective assistance of counsel ... may in a

2  particular case be violated by even an isolated error of counsel

3  if that error is sufficiently egregious and prejudicial." See

4  Murray v. Carrier, 477 U. S. 478, 496 (1986). This particular

5  IAC claim is just such a claim, as it had a substantial, adverse

6  ripple effect on the proceedings, i.e., caused the jury's

7  deliberative processes to be infected with hatred towards

8  Petitioner, and increased his sentence by eleven (11) years.

9      Clearly, Respondents' Motion to Dismiss is submitted in bad

10  faith for the sole purposes of delaying resolution of this

11  proceeding on the merits and to perpetuate their unlawful

12  restraint upon Petitioner's liberty of freedom.

13  II.    Statutory Tolling / State Created Impediment

14      The one-year limitation period of the AEDPA shall run from,

15  inter alia, "the date on which the impediment to filing an

16  application created by State action in violation of the

17  Constitution or laws of the United States is removed, if the

18  applicant was prevented from filing by such State action." See

19  28 U. S. C. § 2244 (d) (1) (B).

20      Under this provision, it is Petitioner's position that

21  because he had an absolute right to expect that the State

22  would provide him with the effective assistance of counsel at

23  trial and on appeal, it necessarily follows, a fortiori, that the

24  States failure to provide Petitioner with the effective

25  assistance of counsel constitutes an "impediment to filing an

26  application created by State action in violation of the

27  Constitution ... of the United States ...." Where a

28  petitioner defaults a claim as a result of the denial of the

1  right to effective assistance of counsel, the State, which is

2  responsible for the denial as a constitutional matter, must

3  bear the cost of any resulting default and the harm to state

4  interests that federal habeas review entails. See Coleman v.

5  Thompson, supra, 501 U. S. at 754.

6      Respondents' reliance on Dunker v. Bissonnette, 154 F.

7  Supp. 2d 95, 104 (D. Mass. 2001); Ramos v. Carey, 2003 WL

8  21788799, * 2 (N. D. Cal. July 31, 2003) to the contrary, see RMD,

9  p. 13, is simply no match for the Supreme Court's decision in

10  Coleman v. Thompson, supra. See e.g., Hope v. Pelzer, 536 U.S.

11  730, 747 (2002) (recognizing that district court decisions are no

12  match for circuit precedent).

13      What's more, although the "impediment" was initially

14  "removed" once Petitioner came upon the People v. Davis case, see

15  VPWHC, p. 12, lines 13-17, once counsel was informed of the issue

16  and failed to take corrective action, see Wills I Dec., ¶¶ 3-4,

17  the "impediment" became reimposed because the State had

18  the opportunity to take corrective action but failed to avail

19  itself of the opportunity. In addition, prison officials'

20  failure to allow Petitioner adequate access to the law library, see

21  Wills I Dec., ¶ 5, also constitutes an "impediment." See e.g.,

22  Roy v. Lampert, supra, 465 F. 3d at 970-71.

23      Once again, as explained above, see ante at p. 12,

24  Respondents are simply attempting to cover up the State's failure

25  to provide Petitioner with the effective assistance of trial and

26  appellate counsel. Respondents and their counsel, as agents of

27  the State that has deprived Petitioner of his right to the effective

28  assistance of counsel as a constitutional matter, should not be

1  rewarded for the State's failure to provide Petitioner with the
2  effective assistance of counsel by having these proceedings
3  dismissed as time barred. This would result in an egregious
4  miscarriage of justice by saying ineffective assistance of
5  counsel claims are no longer cognizable. Indeed, Respondents
6  and their counsel come to this Court with unclean hands. And
7  as the United States Supreme Court recently recognized, a
8  court can still determine whether the interests of justice
9  would be better served by addressing the merits or by dismissing
10  the petition as time barred. See Day v. McDonough, supra, 126
11  S. Ct. at 1684.

12      This is just a case where the interests of justice
13  sharply favor adjudication on the merits.

14      Clearly, Respondents' Motion to Dismiss is submitted in bad
15  faith for the sole purposes of delaying resolution of this
16  proceeding on the merits and to perpetuate their unlawful
17  restraint upon Petitioner's liberty of freedom.

18  **III.**    Statutory Tolling / New Rule Made Retroactive

19      The one-year limitation period of the AEDPA shall run from,
20  inter alia, "the date on which the constitutional right asserted
21  was initially recognized by the Supreme Court, if the right has
22  been newly recognized by the Supreme Court and made
23  retroactively applicable to cases on collateral review." See
24  28 U.S.C. § 2244 (d)(1)(C).

25      In Dodd v. United States, 545 U.S. 353 (2005), the
26  United States Supreme Court had occasion to interpret the nearly
27  identical provision at 28 U.S.C. § 2255 ¶ 6 (3). The Dodd Court
28  had to determine exactly when the one-year limitation period under

16

1  28 U.S.C. § 2255 ¶ 6 (3). The parties offerred differring

2  versions on the subject. The Petitioner asserted that the

3  limitations period runs from the date on which the right

4  asserted was made retroactively applicable. See Dodd v.

5  United States, supra, 545 U.S. at 357. The Respondent

6  asserted that the limitations period runs from the date on which

7  the Supreme Court initially recognized the right asserted. See

8  id. The Dodd Court adopted the Respondent's version. The Court

9  held that the text of ¶ 6 (3) settles the dispute. See id. It

10 unequivocally identifies one, and only one, date from which the

11 1-year limitation period is measured: " the date on which the

12 right asserted was initially recognized by the Supreme Court."

13 See id.

14      Thus, we must identify the date in which the Supreme Court

15 initially recognized the constitutional right asserted by Petitioner.

16 The constitutional right relied upon by Petitioner was announced

17 by the United States Supreme Court in Rompilla v. Beard, 545

18 U.S. 374 (2005), on June 30, 2005.

19      Because the one-year limitation period of 28 U.S.C. § 2244

20 (d)(1)(C) commenced on June 30, 2005, Petitioner, absent

21 other applicable tolling provisions/doctrines, had until June 30,

22 2006, in which to file his petition in this Court. And although

23 Petitioner did not file his petition until February 21, 2007,

24 see ante at p. 11, as set forth above, see parts I and II, supra,

25 Petitioner is entitled to equitable tolling and statutory tolling

26 under 28 U.S.C. § 2244 (d)(1)(B) because prison officials'

27 failure to allow Petitioner adequate access to the law library

28 constituted a state created impediment, a legal cause for

1  the delay in Petitioner's filing of his Federal petition. In addition,
2  Petitioner is entitled to statutory tolling under 28 U.S.C. § 2244
3  (d)(2), see ante at pp. 10-11, during the entire period in which
4  the state courts were considering the habeas petitions - from
5  March 20, 2006, the date the petition was filed in the state
6  superior court, until February 7, 2007, the date the petition
7  was denied by the California Supreme Court.

8      In a nutshell then, because Petitioner is entitled to
9  tolling under other provisions of law, e.g., equitable tolling, as
10 well as statutory tolling under 28 U.S.C. § 2244 (d)(1)(B) and
11 (d)(2), the one-year limitations period did not even begin to
12 run until February 7, 2007. And since Petitioner filed his
13 petition in this Court on February 21, 2007, see ante at p. 11,
14 the Federal petition was filed well within the one-year limitation
15 period of the AEDPA.

16     The next step we must undertake is whether the rule in
17 Rompilla is "newly recognized"... " and [is] made retroactively
18 applicable to cases on collateral review." The answer to this is
19 most definately yes! In Rompilla, the Supreme Court, for the
20 very first time, held that an attorney's failure to conduct an
21 adequate investigation of prior convictions amounted to
22 deficient performance, see 545 U.S. at 383, that was
23 sufficiently prejudicial to sustain a finding of ineffective
24 assistance of counsel. See id., at 390. Thus, the Rompilla Court
25 announced a "new rule." And because Rompilla is a habeas
26 proceeding, it necessarily follows then, a fortiori, that it has
27 been "made retroactively applicable to cases on collateral review"
28 as the holding is dependent on retroactivity, i.e., Rompilla

18

1  could not have obtained the relief he did unless the decision
2  called for retroactive application.

3     Clearly, Respondents' Motion to Dismiss is submitted in bad
4  faith for the sole purposes of delaying resolution of this
5  proceeding on the merits and to perpetuate their unlawful
6  restraint upon Petitioner's liberty of freedom.

7  IV.   Actual Innocence Exception

8     Even assuming, arguendo, that Petitioner has exceeded the
9  one-year limitation period of the AEDPA and has failed to
10 demonstrate an entitlement to equitable/statutory tolling as
11 urged in parts I, II, and III, supra, see ante at pp. 2-19 (though
12 any such assumption should not be construed as a concession as it
13 is merely stated for the purpose of this point of argument), this
14 Court may still reach the merits of any defaulted constitutional
15 claims if Petitioner "falls within the 'narrow class of cases . . .
16 implicating a fundamental miscarriage of justice.'" See
17 Schlup v. Delo, 513 U.S. 298, 314-15 (1995). "[T]he miscarriage
18 of justice exception is concerned with actual as compared to
19 legal innocence," see Sawyer v. Whitley, 505 U.S. 333, 339
20 (1992), and "serves as 'an additional safeguard against
21 compelling an innocent man to suffer from an unconstitutional loss
22 of liberty,' guaranteeing that the ends of justice will be served in
23 full." See McCleskey v. Zant, 499 U.S. 467, 495 (1991).

24    Although demanding in all cases, the precise scope of the
25 miscarriage of justice exception depends on the nature of the
26 challenge brought by the habeas petitioner. See Calderon v.
27 Thompson, 523 U.S. 538, 559 (1998). For example, if the
28 petitioner asserts actual innocence of the underlying crime, the

1  <u>Schlup</u> "more likely than not" standard applies. <u>See</u> <u>Calderon v.</u>
2  <u>Thompson</u>, supra, 523 U.S. at 559. If the petitioner asserts
3  actual innocence of a sentence enhancer, the <u>Sawyer</u> "clear and
4  convincing evidence" standard applies. <u>See</u> <u>id</u>.

5      As will be more fully discussed below, Petitioner asserts actual
6  innocence of both the underlying crime and a sentence enhancer.

7      <u>A.   Petitioner is Actually Innocent of the Underlying Crime</u>
8      Petitioner asserts that he is actually innocent of the crimes
9  with which he was charged. <u>See</u> RNL, Exhibit "J," pp. 32-33
10 (Cal. Supreme Court Habeas Petition); VPWHC, p. 8. These charges
11 include: First Degree Burglary; Grand Theft; and Possession
12 of Stolen Property. [4] <u>See</u> RNL, Exhibit "A," pp. 1-2.

13     In order to have otherwise procedurally defaulted claims
14 decided on the merits, a habeas petitioner must "show that
15 'a constitutional violation has probably resulted in the
16 conviction of one who is actually innocent.'" <u>See</u> <u>Schlup v.</u>
17 <u>Delo</u>, supra, 513 U.S. at 327. This "standard does not require
18 absolute certainty about the petitioner's guilt or innocence."
19 <u>See</u> <u>House v. Bell</u>, 126 S. Ct. 2064, 2077 (2006). Rather, "the
20 standard requires the district court to make a probabilistic
21 determination about what reasonable, properly instructed
22 jurors would do." <u>See</u> <u>Schlup</u>, 513 U.S. at 329. To
23 establish the requisite probability, the petitioner must show
24 that it is more likely than not that no reasonable juror would
25 have convicted him in light of new evidence. <u>See</u> <u>id</u>., at 327.
26 To be credible, such a claim requires a petitioner to support

27 _____
28     [4] The jury reached a verdict of not guilty for the charge of
   Possession of Stolen Property. <u>See</u> RNL, Exhibit "A," p. 7.

his allegations of constitutional error with new reliable
evidence - whether it be exculpatory scientific evidence,
trustworthy eyewitness accounts or critical physical evidence -
that was not presented at trial. See Schlup v. Delo, supra,
513 U.S. at 324. This "new evidence" requirement is not
limited to just "newly discovered evidence." See House v.
Bell, supra, 126 S. Ct. at 2077. Rather "[t]he habeas court
must make its determination concerning the petitioner's
innocence 'in light of all the evidence, including that alleged to
have been illegally admitted (but with due regard to any
unreliability of it) and evidence wrongly excluded or to have
become available only after the trial.'" See Schlup, 513 U.S.
at 328 (footnote omitted). Thus, even "newly presented" but
previously available evidence "may be considered in analyzing
[an actual innocence] claim." See Sistrunk v. Armenakis, 292
F. 3d 669, 673 n. 4 (9th Cir. 2002) (en banc).

    Here, the constitutional violations that occurred at trial
are ineffective assistance of counsel and prosecutorial
misconduct.

### 1. Ineffective Assistance of Counsel

    First, we have counsel's ineffectiveness at the motion to
suppress evidence hearing. Had it not been for counsel's
deficient and prejudicial performance at the hearing, the
bicycle and incriminating statements allegedly made by
Petitioner [5] would have been suppressed as "fruit-of-the-
poisonous-tree" because the police falsely arrested Petitioner

---

[5] Petitioner vehemently denies he ever told police he purchased
the bicycle from an unknown individual in the Lucky's parking lot.

21

1   for public intoxication as a ruse to unlawfully detain Petitioner
2   pending investigation into ownership of the bicycle. <u>See</u>
3   Memorandum of Points and Authorities in Support of Petition
4   for Writ of Habeas Corpus ("VPWHC Memo."), p. 10. In addition,
5   counsel failed to urge exclusion of any reference to Petitioner's
6   sobriety or that Petitioner possessed the bicycle on the ground
7   the police maliciously destroyed material, exculpatory evidence,
8   i.e., refused to allow Petitioner a blood alcohol test and refused
9   to take fingerprints of the bicycle. <u>See</u> <u>id.</u>, at pp. 10-11.

10          It is not surprising that the police engaged in such
11  deceitful misconduct to secure Petitioner's conviction. Given
12  the fact that Deputy WALTERS allowed the true perpetrator to
13  escape by failing to give chase, he had to do everything in his
14  power to avoid embarrassment by his blunder. And what better
15  person to take the blame than Petitioner. Having been convicted of
16  burglary in the past, Petitioner was as good a suspect they could
17  have hoped for having just fallen in their lap and all. In fact,
18  Deputy WALTERS even attempted to trick Petitioner into signing a
19  property receipt for the bicycle. <u>See</u> VPWHC, p. 7. Petitioner, of course,
20  declined. <u>See</u> <u>id.</u>

21          And to make matters worse, the jury was not even properly
22  instructed as to the reliability or trustworthiness of the so-called
23  evidence that Petitioner was inebriated or possessed the bicycle, i.e.,
24  if it found the police's failure to allow a blood-alcohol test or take
25  fingerprints of the bicycle was to prevent Petitioner from submitting
26  evidence to the contrary it could disregard the so-called evidence.
27  <u>See</u> e.g., <u>Arizona v. Youngblood</u>, 488 U.S. 51, 58 (1988)
28  (recognizing trial court's instructions to the jury that it could

1  disregard evidence). And because a court must presume that jurors

2  remember and follow their instructions, see Weeks v. Angelone, 528

3  U. S. 225, 234 (2000), it must be presumed that the jury would

4  have disregarded any reliance on the so-called evidence that

5  Petitioner was inebriated or possessed the bicycle had the jury

6  been so properly instructed. Under Schlup, this Court must consider

7  what "properly instructed jurors would do." See Schlup v. Delo,

8  supra, 513 U. S. at 329.

9       Absent introduction of the inadmissible, untrustworthy

10  evidence that Petitioner was inebriated or possessed the bicycle,

11  it is more likely than not that no reasonable juror would have found

12  Petitioner guilty beyond a reasonable doubt.

13       Second, we have counsel's ineffectiveness in failing to

14  obtain evidence that the alleged First Degree Burglary prior conviction

15  was invalid. See VPWHC Memo, pp. 6-10. Had it not been for

16  counsel's ineffectiveness in this regard, the alleged prior would

17  not have been used to impeach Petitioner's testimony at trial.

18  Indeed, the introduction of this alleged prior conviction had a

19  profound, irreparable adverse impact on the jury's decision-making

20  process for the remainder of the trial. When the jury heard of this

21  prior conviction their facial expressions exhibited disgust and

22  contempt towards Petitioner. See VPWHC, p. 9. And it is unlikely

23  that the jury's guilty verdict was based on an objective review of

24  the evidence given that its deliberations lasted only during the

25  lunch break, approximately thirty-five minutes. Rather, the more

26  rational conclusion is that jury's verdict was based upon passion or

27  prejudice.

28       Absent introduction of this invalid prior conviction, it is more

23

1   likely than not that no reasonable juror would have found Petitioner

2   guilty beyond a reasonable doubt.

3       Finally, we have counsel's ineffectiveness in suborning

4   Petitioner to commit perjury by falsely testifying that he had

5   been drinking so as to support a fraudulent diminished capacity

6   defense. See VPWHC Memo., pp. 11-12, and 15. Given that

7   Petitioner has always maintained his innocence of the crime, see

8   RNL, Exhibit "J," pp. 32-33; VPWHC, p. 8, Petitioner's testimony

9   regarding his inebriation presents an irreparable aspect of internal

10   inconsistency. See e.g., Florida v. Nixon, 543 U.S. 175, 191-92

11   (2005) (quoting Lyon, Defending the Death Penalty Case: What

12   Makes Death Different?, 42 Mercer L. Rev. 695, 708 (1991) ("It

13   is not good to put on a 'he didn't do it' defense and a 'he is sorry

14   he did it' mitigation. This just does not work. The jury will give

15   the death penalty to the client and, in essence the attorney."))

16       Absent this inconsistent evidence, it is more likely than not

17   that no reasonable juror would have found Petitioner guilty beyond

18   a reasonable doubt.

19       <u>2. Prosecutorial Misconduct</u>

20       The prosecutor committed egregious misconduct by impressing

21   upon the jury a false fact the Petitioner sustained a prior conviction

22   for First Degree Burglary while at the same time Petitioner was a

23   resident of the address he was supposed to have burglarized. See

24   VPWHC Memo., pp. 19-20. And as previously stated, the introduction of

25   this invalid prior conviction had a profound, irreparable adverse

26   impact upon the jury's decision-making process. So much so probably

27   that the jury possessed a bias against Petitioner for the remainder of

28   the proceedings undermining the fundamental fairness of the

1  trial. See e.g., <u>Dyer v. Calderon</u>, 151 F. 3d 970, 973 (9th Cir.) (en

2  banc) (The bias or prejudice of even a single juror would violate a

3  defendant's right to a fair trial.), <u>cert. denied</u>, 525 U.S. 1033

4  (1998). <u>See also</u> <u>Gomez v. Vernon</u>, 255 F. 3d 1118, 1122 (9th Cir.

5  2001) (While all may be fair in war, such is not the case in the judicial

6  arena - the courtroom is not a battlefield).

7          Absent the prosecutor's misconduct, it is more likely then not

8  that no reasonable juror would have found Petitioner guilty beyond

9  a reasonable doubt.

10          <u>B.  Petitioner is Actually Innocent of a Sentencing Enhancer</u>

11          Petitioner asserts that he is actually innocent of a prior conviction

12  used as a sentence enhancer. <u>See</u> VPWHC, pp. 7-8 and Exhibit "A."

13  This alleged prior consists of First Degree Burglary. <u>See</u> RNL,

14  Exhibit "A," pp. 3-4.

15          In order to have otherwise procedurally defaulted claims

16  decided on the merits, a habeas petitioner "must show by clear and

17  convincing evidence that, but for constitutional error, no reasonable

18  juror would have found the petitioner eligible for the" enhanced

19  sentence "under the applicable state law." <u>See</u> <u>Sawyer v. Whitley</u>,

20  supra, 505 U.S. at 336.

21          Here, the constitutional violations that occurred at the jury

22  trial on the prior convictions are ineffective assistance of counsel and

23  prosecutorial misconduct.

24          <u>1.  Ineffective Assistance of Counsel</u>

25          Counsel was ineffective in failing to obtain evidence that

26  the alleged First Degree Burglary prior conviction was invalid. <u>See</u>

27  VPWHC Memo., pp. 6-10.  Had it not been for counsel's omission in

28  this regard, there is absolutely NO way any reasonable juror would

1  have found Petitioner guilty of the prior conviction. Indeed, had

2  counsel obtained the relevant evidence and filed a motion to strike

3  the prior conviction at the appropriate time there would not have even

4  been a jury trial on the prior conviction

5      Absent counsel's omission, Petitioner has shown by clear and

6  convincing evidence that no reasonable juror would have found guilt

7  beyond a reasonable doubt.

8          ## 2. Prosecutorial Misconduct

9      The prosecutor committed egregious misconduct by falsely

10  convincing the jury of the validity of the alleged First Degree

11  Burglary prior conviction. This is an especially egregious act of

12  misconduct given the fact that the prosecutor actually knew that

13  Petitioner was a resident of the address he was alleged to have

14  burglarized. "[T]he prosecutor's 'deliberate deception of a

15  court and jurors by the presentation of known false evidence is

16  incompatible with rudimentary demands of justice.'" See e.g.,

17  Banks v. Dretke, 540 U.S. 668, 694 (2004).

18      Absent the prosecutor's misconduct, Petitioner has shown by

19  clear and convincing evidence that no reasonable juror would have

20  found guilt beyond a reasonable doubt.

21      Clearly, Petitioner has satisfied his burden of demonstrating

22  that absent the constitutional violations, individually/cumulatively,

23  he is actually innocent of the underlying crime for which he was

24  charged as well as the prior conviction used as a sentence enhancer.

25              CONCLUSION

26      Accordingly, the foregoing facts and argument is persuasive

27  that his federal petition is not untimely filed or, if untimely, that

28  cause and prejudice resulting from trial counsels' ineffective

1  assistance entitles Petitioner to equitable and/or statutory
2  tolling of the one-year period of limitation of the AEDPA or that
3  Petitioner is entitled to consideration of the merits of the claims
4  under the actual innocence exception.
5       WHEREFORE, Petitioner prays for the following:
6       1. That Respondents' motion to dismissed be DENIED
7  with prejudice, and
8       2. The Petitioner's petition be ADJUDICATED on the
9  merits.
10  DATED: Jan. 15, 2008

11                                Respectfully Submitted,

12

13                          By: _Dale Wills_____
14                              DALE WILLS
                                Petitioner In Pro Se

15                  ///

16                  ///

17                  ///

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DALE WILLS,
        **Plaintiff or Petitioner**,

v.

JAMES TILTON, et al.,
        **Defendant or Respondent**.

_____/

**Case Number:** C·07-3354 CW (R)

**PROOF OF SERVICE**

I hereby certify that on *January 15*, *2008*, I served a copy of the attached *Memorandum of Points and Authorities in Opposition to Respondents' Motion to Dismiss*, by placing a copy in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the United States Mail at *Corcoran, California*.

**(List Name and Address of Each Defendant or Attorney Served)**

    Office of the Attorney General
    of the State of California
    Attn: BRUCE ORTEGA, Esq., No. 131145
    455 Golden Gate Avenue, Suite 11000
    San Francisco, CA 94102-7004

I declare under penalty of perjury that the foregoing is true and correct.

_____
**(Name of Person Completing Service)**

DALE WILLS
Petitioner In Pro Se